# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0313, <u>State of New Hampshire v. Ernest Justin Blanchette</u>, the court on May 15, 2017, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Ernest Justin Blanchette, appeals his conviction for aggravated felonious sexual assault (AFSA). <u>See</u> RSA 632-A:2, I(n)(1) (2016). He argues, among other things, that the Superior Court (<u>Abramson</u>, J.) erred by concluding that the evidence presented at trial was sufficient to prove that the defendant was employed by a correctional institution for purposes of RSA 632-A:2, I(n)(1). We reverse.

The jury could have found the following relevant facts. On July 2, 2015, the victim was at the Belknap County Superior Court awaiting sentencing for a probation violation. She had been in custody at the Belknap County jail (county jail) for approximately one month following her arrest on the violation. The victim was sentenced to a two-to-four-year term of imprisonment, and she was thereafter taken to a holding cell so that she could be transported to the New Hampshire State Prison for Women (state prison). The defendant, then a Belknap County deputy sheriff, transported the victim to the state prison.

The defendant already knew the victim from two prior transports. In September 2014, the defendant transported the victim from the county jail to a dentist for the victim's dental appointment. The defendant allowed the victim to use a cell phone and smoke cigarettes. As the defendant and the victim were returning from the appointment, the defendant drove the victim to a secluded area, where they engaged in sexual intercourse. Later, in November 2014, as the defendant transported the victim to another dental appointment, he gave her a cigarette and provided her with a cell phone. Although they discussed making a "detour," they did not engage in any sexual contact during that trip.

Thus, the State contended at trial, by the time the defendant transported the victim to the state prison on July 2, 2015, he had imposed a coercive set of expectations on the victim: the exchange of privileges for sexual activity. While en route to the state prison on July 2, the defendant again gave the victim cigarettes and a cell phone to use to call friends and family. The defendant also used his computer to determine whether the victim's boyfriend had an active arrest warrant in New Hampshire. Before bringing her to the state

prison, the defendant drove the victim to an abandoned house, and they engaged in sexual intercourse.

The defendant was indicted on one count of AFSA for his conduct on July 2, pursuant to RSA 632-A:2, I(n)(1). That provision provides:

I. A person is guilty of the felony of aggravated felonious sexual assault if such person engages in sexual penetration with another person under any of the following circumstances:

. . . .

(n) When the actor is in a position of authority over the victim and uses this authority to coerce the victim to submit under any of the following circumstances:

(1) When the actor has direct supervisory or disciplinary authority over the victim by virtue of the victim being incarcerated in a correctional institution . . . where the actor is employed . . . .

RSA 632-A:2, I(n)(1) (emphasis added).

The case proceeded to trial. At the end of the State's case, the defendant moved to dismiss the charge, arguing, in part, that the State had presented insufficient evidence to prove that he was employed by a correctional institution where the victim was incarcerated. See id.

The trial court denied the motion. The court ruled that an actor is "employed" by a correctional institution if he is "entrusted with the performance of acts or functions by the correctional institution." In other words, an actor is employed by a correctional institution if the correctional institution directs the actor to carry out a task. The court then determined that a reasonable trier of fact could find that the defendant "was 'employed' by the [state prison] to carry out the task of transporting and delivering [the victim]" to the state prison.

The jury found the defendant guilty, after which the defendant filed a motion for judgment notwithstanding the verdict on the same ground raised in the motion to dismiss. The trial court denied the motion, and this appeal followed.

On appeal, the defendant raises a number of arguments challenging his conviction and sentence. However, because it is dispositive, we need only address one issue: whether the trial court erred by concluding that there was

sufficient evidence to prove that the defendant was employed by a correctional institution for purposes of RSA 632-A:2, I(n)(1).

The parties dispute whether the statute covers the defendant's conduct in light of the language that appears to limit liability to individuals whose authority over the victim is derived from being "employed" by the correctional institution where the victim is incarcerated. Id. On appeal, the State advances the trial court's interpretation — that an actor can be considered to be employed by a correctional institution merely if that institution entrusts the actor with the performance of an act or function. Based upon that interpretation, the State asserts that it presented sufficient evidence to prove that the defendant was entrusted with the task of transporting the victim by either one of two correctional institutions: the county jail or the state prison.

The defendant argues that an individual is "employed" by a correctional institution only if there is an "employer-employee relationship" between the institution and the individual. He then observes that there was uncontroverted evidence that, on July 2, 2015, he was an employee of the Belknap County Sheriff's Office.

In the alternative, the defendant argues that, even if we accept the broader interpretation of subsection I(n)(1) urged by the State, there was insufficient evidence to establish that he was acting at the direction of a correctional institution. We agree. Consequently, we need not decide whether the interpretation articulated by the trial court, and embraced on appeal by the State, is correct. Even assuming that broader interpretation of the statute, we conclude that the State presented insufficient evidence to establish that the county jail or the state prison entrusted the defendant with the task of transporting the victim for purposes of RSA 632-A:2, I(n)(1).

To prevail upon a challenge to the sufficiency of the evidence, the defendant must show that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all of the evidence and all reasonable inferences therefrom in the light most favorable to the State. State v. Craig, 167 N.H. 361, 369 (2015). The trier of fact may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom. Id. at 369-70. We accord considerable weight to the judgments of the trier of fact on the credibility of witnesses and the weight to be given testimony. See Despres v. Hampsey, 162 N.H. 398, 401 (2011). Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. Craig, 167 N.H. at 370.

The State argues that the following evidence demonstrates that the county jail entrusted the defendant with the task of transporting the victim to the state prison: (1) the defendant had transported the victim to two dental

3

appointments while she was at the county jail; (2) the defendant was a county employee; (3) the defendant worked in a building next to the county jail; (4) before transporting the victim to prison, the defendant transported a different inmate to the county jail; (5) "each mittimus signed by the courts" states that the sheriff is "ordered to deliver the [inmate] to" the state prison; and (6) "under the common law, a deputy sheriff is tasked with transporting prisoners." Alternatively, the State asserts that this same evidence supports the conclusion that the state prison entrusted the task to the defendant. We are not persuaded that the enumerated evidence supports either conclusion.

Even looking at the evidence in the light most favorable to the State, and using the broad definition urged by the State, no rational trier of fact could have found that either the county jail or the state prison entrusted the defendant with the task of transporting the victim. Neither the evidence cited by the State, nor the record as a whole, shows that an official, employee, or administrator of either institution directed the county sheriff — or the defendant specifically — to transport the victim to the state prison. Moreover, there is no evidence of a general practice regarding prison transports from which it could be reasonably inferred that the defendant was acting at the direction of an official of either correctional institution. Although there may be, in fact, a general practice regarding prison transports, no such evidence was offered in this case.

Indeed, if anything, the evidence presented at trial establishes that it was the trial court itself — rather than an official at the state prison or the county jail — that directed the defendant to transport the victim to the state prison. Significantly, at the close of the State's case, the State asked the trial court to take judicial notice that "pursuant to [RSA 622:8] . . . the sheriff transports inmates to the state prison." RSA 622:8 provides that "[w]henever any convict shall be sentenced to confinement at hard labor the court shall order the sheriff of the county to remove him to the state prisons and deliver him to the commissioner of corrections." RSA 622:8 (2001) (emphasis added). The court granted the State's request, and gave a jury instruction that "under the law the Sheriff transports the [inmate] to the New Hampshire State Prison."

Accordingly, we conclude that the State presented insufficient evidence to prove, beyond a reasonable doubt, that the defendant had authority over the victim "by virtue of the victim being incarcerated in a correctional institution . . . where the [defendant] [was] employed." RSA 632-A:2, I(n)(1). The trial court therefore erred by denying the defendant's motions to dismiss and for judgment notwithstanding the verdict, and we reverse.

As we noted above, given our disposition of the case, we need not choose between the proffered interpretations of RSA 632-A:2, I(n)(1). Nonetheless, we observe that the parties have presented two facially plausible arguments, both of which draw upon the legislative history of Laws 2003, 226:2, the law that

amended subsection I(n)(1) to include the phrase "where the actor is employed." Although we have resolved the present appeal without addressing the merits of the parties' interpretations of the statutory language, the disagreement persists: accordingly, we invite the legislature to amend the language in RSA 632-A:2, I(n)(1) to clarify its intent with regard to the meaning of the phrase at issue.

Reversed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.


**Eileen Fox,**
**Clerk**